Phœnix Ins. Co. v. Spiers & Thomas.

CASE 49—PETITION ORDINARY—MAY 24.

## Phœnix Ins. Co. v. Spiers & Thomas.

APPEAL FROM OWEN CIRCUIT COURT.

1. INSURANCE—PROOF OF LOSS.—Conditions in an insurance policy relating to the mode of establishing a loss are not so strictly enforced as those affecting the risk itself. In this case the company, by notifying the insured that it would not pay because it considered the policy void by reason of additional insurance obtained without the consent of the company, waived the condition requiring proof of loss, and the duty of the assured to make such proof was not revived by the subsequent statement of the company that if it had been misled it would entertain proofs *to that effect.*

2. AN AGENT ORDINARILY HAS NO POWER TO APPOINT A SUB-AGENT without the knowledge or consent of his principal; and while an agent may confer upon a clerk, or subordinate, authority to exercise certain powers, yet the circumstances of this case show that the person who it is claimed acted as sub-agent, acted under a private arrangement between him and the agent, and he can not be regarded as having acted as the agent of the company.

3. ADDITIONAL INSURANCE—WAIVER OF CONDITION.—Where a policy of insurance provides for a forfeiture in case of additional insurance without the written consent of the company indorsed upon the policy, the condition may be waived, either by parol agreement or by the

| | |
|---|---|
| 87 | 285 |
| 90 | 243 |
| 87 | 285 |
| 91 | 213 |
| 87 | 285 |
| 100 | 36 |
| 87 | 285 |
| 105 | 255 |
| 87 | 285 |
| 106 | 376 |
| 106 | 818 |
| 87 | 285 |
| 107 | 249 |
| 87 | 285 |
| 113 | 366 |
| 113 | 626 |
| 87 | 285 |
| 120 | 773 |
| 87 | 285 |
| 124 | 735 |
| 87 | 285 |
| f128 | 359 |
| 87 | 285 |
| f134 | 533 |
| 87 | 285 |
| f137 | 264 |
| 137 | 549 |

conduct of the company; and silence for an unreasonable time upon the part of the company, after knowledge or notice of the breach of the condition, will constitute such conduct.

4. STATUTE OF FRAUDS—CHANGE OF CONTRACT.—As a contract of insurance is not within the statute of frauds, it is not necessary that it should be in writing; and although in writing it may be changed by parol, even though the contract provides that it shall only be changed by writing.

5. A POLICY OF INSURANCE IS TO BE CONSTRUED MOST STRONGLY AGAINST THE COMPANY, and ambiguities resolved in favor of the insured.

6. POWERS OF AGENT.—Where an agent is intrusted with the general management of a business, he has implied general authority to do all that ordinarily enters into the conduct of that business, and to that extent the principal is bound by his acts unless the party dealing with him has notice that his powers are in fact limited. Therefore, an insurance agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public. And under this rule, an agent who solicits the insurance, takes the application, receives the premium and delivers the policy, may, by his conduct or acts, bind his company by way of waiver of a forfeiture on account of additional insurance, in the absence of knowledge upon the part of the assured that the agent's powers in this respect have been restricted. It follows, therefore, that the knowledge of the agent, under such circumstances, is to be imputed to the company.

7. SPECIAL FINDINGS AGAINST EVIDENCE.—As the special findings in this case are inconsistent with each other, and some of them directly in the teeth of the testimony, the appellant is entitled to a new trial.

WM. LINDSAY, WARREN MONTFORT AND J. C. STROTHER FOR APPELLANT.

1. The waiver of the right by a company to rely upon a breach of a condition in the policy as a release from liability must be unequivocal and of such character as to mislead the insured to his prejudice. (Phœnix Ins. Co. v. Stephenson, 78 Ky., 155.)

2. A mere local agent and surveyor of an insurance company has no authority to waive a condition contained in the policy of insurance.

O. B. HALLAM AND MONTGOMERY, LINDSAY & BOTTS FOR APPELLEES.

1. A refusal by the company to pay the loss for a specified reason other than the failure to make proof of loss, is a waiver of the condition requiring proof of loss. (May on Insurance, secs. 468-69; Wood on Insurance, secs. 419-20; Manhattan Ins. Co. v. Stein, 6 Bush, 657; Continental Ins. Co. v. Randolph, 8 Ky. Law Rep., 188.)

2. Condition in a policy that additional insurance will avoid the policy is waived by the company having knowledge of it and not objecting. (May on Insurance, secs. 282, 373, 497, 500; Wood on Insurance, secs. 496-7; Phœnix Ins. Co. v. Stephenson, 78 Ky., 157; Von Bories v. U. S. Mut. Ins. Co., 8 Bush, 135.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, The Phœnix Insurance Company, of Hartford, Conn., issued to the appellees, Spiers and Thomas, of New Liberty, Ky., a policy of insurance of one thousand two hundred dollars, for six months from February 20, 1883, upon twelve thousand pounds of tobacco.

It provided: "If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, * * * this policy shall be void. * * * The assured shall forthwith give notice of loss to the company, and as soon after as possible tender a particular account of such loss signed and sworn to by them. * * * The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid sixty days after due notice and proofs of the same are made by the assured and received at this office in accordance with the terms of this policy. * * * Until such proof, declarations and certificates are produced, and examinations and appraisals permitted, the loss shall not be payable. * * * * This policy may be canceled at any time by the company on giving written or verbal notice to that effect, and refunding or tendering a ratable proportion of the premium for the unexpired term."

Phœnix Ins. Co. v. Spiers & Thomas.

The assured added other tobacco to the stock; and on May 4, 1883, the Liverpool, London and Globe Insurance Company issued a policy for two months for eight hundred dollars upon the entire lot, then amounting to twenty thousand pounds. It was destroyed by fire on June 23, 1883, being then worth three thousand dollars, and the total insurance on it being two thousand dollars.

The appellant never consented to the additional insurance by writing indorsed upon the back of its policy. The appellees now seek to enforce it.

But two of the several defenses need be considered. They are, first, that the preliminary proofs were not made; and second, that the policy is not enforceable, because of the additional insurance taken without the written consent of the appellant.

Soon after the loss occurred the appellant had it investigated by its adjusting agent, and thereupon notified the appellees, in writing, that it considered the policy void by reason of the taking of the additional insurance without its consent, and distinctly refused to pay upon this ground alone.

This was equivalent to the company saying that it would be useless to furnish any preliminary proofs; that no form or degree of them would induce payment, and it would be but an idle ceremony to present them. Such conduct waives the necessity for their production before suit, although required by the policy. The stipulation is in favor of the insurer; and his conduct renders it an idle formality, the observance of which the law will not, therefore, require. (Manhattan Ins. Company v. Stein, &c., 5 Bush, 652;

Martin v. Ins. Company, 20 Pick., 389 ; Thwing v. Ins. Company, 111 Mass., 110.)

Conditions affecting the risk itself are more strictly enforced in. favor of the insurer than those relating to the mode of establishing a loss.

In Wood on Fire Insurance, section 496, it is said : " The production of proofs of loss, or defects therein, may be waived, and such waiver may be implied from what is said or done by the insurer."

Another leading writer upon this subject says : "A distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss." (May on Insurance, section 469.)

It is insisted, however, that there was a non-acceptance of this waiver ; that the matter was re-opened at the instance of the assured, and that they, therefore, could not thereafter sue without first furnishing these proofs.

It appears that, soon after the refusal to pay, the attorneys of the appellees wrote to the company, saying they believed it had been misled as to the facts, and requesting an investigation and remittance of the amount of the policy. The company replied, that if it had been misled it would " entertain proofs *to that effect.*"

Evidently the letter of the attorneys related alone to the refusal to pay upon the ground that the policy had been avoided by taking other insurance without the company's consent. The assured were induced by the insurer to believe that it based its refusal to pay upon this ground alone, and did not intend to insist

upon the production of the preliminary proofs; and this refusal, so grounded, it never did withdraw, and is now insisting upon it.

One of the special findings of the jury is, that the company refused to pay upon this ground; and we think its conduct lulled the appellees into the belief that the mere preliminary proofs would receive no consideration.

It will not, therefore, be heard to now defend because they were not furnished before suit.

It is insisted that the forfeiture provided by the terms of the policy, in case other insurance should be taken without the written consent of the appellant indorsed upon its policy, was waived by it.

A brief statement of facts is necessary to a proper understanding of this question. One Curtis was the agent of the company at New Liberty. Sometimes he styled himself its surveyor. He took applications for insurance, made the surveys, received the premiums, countersigned and delivered the policies to the insured, but did not issue them. He was the sole representative in that locality of the appellee, a corporation located in a distant State.

One Vallandigham was loaning money upon tobacco in the vicinity of the appellees, and, therefore, desired its insurance. He agreed with Curtis, if he would divide his commissions with him, that he would bring to him the insurance upon all the tobacco in which he might thus become interested. This arrangement was unknown to the company. As between it and Curtis the powers of the latter as its agent appear to have been limited.

It is not certain whether Vallandigham suggested
the insurance of their tobacco to the appellees, or they
to him. They doubtless believed he was an agent
of the company. He so represented to them, and
they obtained both policies of insurance through him;
that is, he furnished the information and made the
applications for the insurance; received the premiums,
and paid the same in one instance to Curtis, and in
the other to one Gayle, who was the local agent of the
Liverpool, London and Globe company. The policies
were delivered by the agents to him; that in the last-
named company being still in his possession when
the loss occurred. There is evidence tending to show
that it was the understanding between Vallandigham
and the appellees that the additional insurance was
to be taken out upon the eight thousand pounds of
tobacco only. The testimony is conflicting as to
whether he so applied for it. He signed the names
of the appellees to the application for the insurance
in the Phœnix company, but in obtaining the ad-
ditional insurance the agent of the Liverpool, London
and Globe company merely obtained from him in-
formation as to the property, and no formal applica-
tion was made out. The policy issued, however, upon
the entire twenty thousand pounds; and the appellees,
after the loss, proved it as such without qualification,
explanation or objection, and obtained the eight hun-
dred dollars insurance. It must, therefore, as to them,
be regarded as having been an insurance upon the
entire lot of tobacco. Vallandigham certainly was
not even purporting to act as agent for the appellant
in obtaining the second policy. Nor can he be re-

garded as its agent as to the first one. The arrangement between him and Curtis was not binding upon the company. It had no knowledge of it. Curtis had no express authority from it to appoint another or a sub-agent.

An agent ordinarily has no power to do so without the knowledge or consent of his principal; and while an agent of an insurance company, who is authorized to contract for risks, receive premiums and deliver policies, may confer upon a clerk or a subordinate authority to exercise these powers, as the service is not of such a personal character as to come within the maxim, *delegatus non potest delegare*, yet in this instance the circumstances show that it was the private arrangement of Curtis and Vallandigham, who was interested in the subject of the insurance; and if it were material to the question at issue, he cannot be regarded as having acted as the agent of the company.

It follows that the testimony detailing what was said between him and Spiers and Thomas was incompetent.

It has been held in some few cases, as in Hutchinson v. Western Insurance Company, 21 Mo., 97, that where the policy provides for a forfeiture in case of additional insurance without the written consent of the insurer indorsed upon the policy, it can only be waived by a literal compliance with the condition. The decided current of authority, however, is that this waiver may arise from the act or conduct of the insurer; and silence for an unreasonable time upon his part, after notice or knowledge of the breach of the condition, will constitute such conduct.

If notice be given to the company of the additional insurance or increased risk, and no objection be made within a reasonable time, fairness and good faith should estop it from insisting upon a forfeiture of the policy because its consent was not indorsed upon it according to its literal terms.

The assured has a right to infer therefrom that the company will not insist upon it. It has not spoken as to a matter for its benefit when it could and should have done so to prevent another from being misled to his probable injury. If it had done so, he might have protected himself probably by other insurance. Its silence under such circumstances is a consent to the additional insurance. A forfeiture upon this ground is not for fraud. It may cancel the policy by reason of it, but if it does so, it must refund a proper proportion of the premium. It can not, therefore, remain mute with a knowledge of the existence of a ground of forfeiture, and if there be no loss, retain the entire premium, but if there be one, rely upon the breach of the contract.

The term "*void*," as used in the policy, is to be regarded as meaning that the insurer may, at his exclusive option, treat it so, and not that the contract becomes an absolute nullity as to either party. The insurer may, therefore, by his conduct, waive his right of forfeiture and estop himself from insisting upon it. (Baer v. The Phœnix Insurance Company, 4 Bush, 242.)

The contract of insurance may be by parol. It is not within the statute of frauds. Such a contract, although in writing, may be changed by parol, even

though it provide that it shall only be done by writing, because men can not so tie their wills as not to be able thereafter to do by consent what the law allows.

Conditions of forfeiture in a policy of insurance, as, indeed, the entire instrument, are to be construed most strongly against the insurer. The company prepares it, and is familiar with its details and many conditions. Its ambiguities are to be resolved against the insurer; but while all this is justly so, yet undoubtedly a condition of forfeiture like the one in question should be upheld. Its object is to guard against over-insurance, and the consequent temptation to fraud and crime.

Experience teaches that in such matters the interest of men is more to be relied upon than their morality. Therefore, no prudent company ever insures property to its full value. It will not do to say that the first insurer should not complain of additional insurance, since it aids him in case of loss by way of contribution, because over-insurance not only is likely to lead to fraud and the destruction of property, but it takes away the owner's incentive to care for and protect it, and, therefore, greatly increases the danger of loss.

While, however, these reasons exist for upholding such a condition of forfeiture, yet it may now be regarded as settled law that insurance companies may, by conduct or parol agreement, waive it, and become estopped from enforcing what is but a conventional condition of forfeiture. (Kenton Insurance Company v. Shea, &c., 6 Bush, 174; Von Bories, &c., v. In-

surance Company, 8 Bush, 133 ; Insurance Company
v. McCrea, &c., 8 Lea., 513.)

There is evidence in the record tending to show
that Curtis had notice of the additional insurance ;
the special verdict so finds ; and it is claimed that
this was notice to the company, and that its silence
under these circumstances operated as a waiver of
any right of forfeiture.

Upon the other hand, it is insisted that notice to
him was not notice to it ; and that no power of waiver
existed in him, because the contract of insurance had
been closed ; because his powers were limited, and he
then owed no duty to the assured.

If the latter knew that his powers were limited,
and that he was invested with no power of waiver,
or if there was any thing connected with the trans-
action to put the assured upon inquiry, then any
conduct of the agent in excess of his authority
would not bind the company. Of course it could
limit his power ; and if the assured knew it had
done so, or as prudent men should have known it,
then they dealt with him at their peril in matters
in excess of his power.

The policy in this case contains no provision as to
how or to whom notice of other insurance is to be
given. If, however, the agent had *apparent* author-
ity in the matter ; if, under all the circumstances, he
*ostensibly* had it ; if his acts indicated general pow-
ers as to the subject of insurance for his company,
then, although in fact his authority was limited, yet
it should be considered adequate as to third parties,
unless those dealing with him had express or infer-
ential notice of the want of power.

The acts of an agent within his ostensible authority are binding upon his principal. If the latter has authorized the opinion that he has given more extensive authority than he has in fact, he will be estopped to deny it. If he holds him out as his general agent, he will be bound by his acts and conduct, although, as between them, his powers are in fact limited, provided the party dealing with him has no notice of the restriction. Thus, if the agent be intrusted with the general management of a business, he has implied general authority to do all that ordinarily enters into the conduct of that business. (Williams v. Getty, 31 Penn. St., 461.)

In the language of the Supreme Court of the United States (Insurance Company v. Wilkinson, 13 Wall, 222): "The powers of the agent are *prima facie* co-extensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

The authority of the agent need not be express; it may be implied from circumstances, and may thus exist as to third parties, although in fact forbidden by agreement between the company and its agent.

Mr. May says: "The authority of an agent must be determined by the nature of his business, and is *prima facie* co-extensive with its requirements. It can not be limited by special private instructions, un-

less the insured has notice, or there is something in
the nature of the business, or the circumstances of
the case, to indicate that the agent is acting under
such special instructions." (May on Insurance, sec-
tion 126.)

The tendency of recent decisions, and we think
properly, is to hold the insurer bound by the acts
and conduct of the local agent whenever it can be
done consistently with the rules of law. The maxim,
*qui facit per alium facit per se,* should apply with
peculiar force to the acts of an insurance agent. He
usually represents a company remotely located. Its
patrons in his vicinity naturally-look to him for direc-
tion generally as to the insurance obtained through
him. He is generally regarded as having full power
in reference to it. Being usually the only man upon
the ground having any thing to do with it, the per-
sons insured in his company, with few, if any excep-
tions, would, in the absence of notice that his powers
were limited, regard his statement as to any matter
relative to such insurance as authoritative, and any
notice to him as to it as sufficient. They rarely know
any thing of the company or of its officers, who issue
the policies, and look to the agent through whom they
have obtained the insurance as the complete represent-
ative of the company in every thing connected with that
insurance. If they did not consider that they were
authorized to do so, it would undoubtedly create dis-
trust and cripple the business. As to third parties, the
agent should, in the absence of notice to the contrary,
be regarded as possessing all the powers his occupa-
tion fairly imports to the public. Under this rule, an

agent who solicits the insurance, takes the application, receives the premium, and delivers the policy, may, in our opinion, by his conduct or acts, bind his company by way of waiver of a forfeiture on account of additional insurance, in the absence of knowledge upon the part of the assured that his powers in this respect have been restricted. This being so, it follows that the knowledge of the agent under such circumstances is to be imputed to the company.

In Wood on Fire Insurance, section 406, it is said: "In all cases where notice is required to be given, unless some special officer is named to whom it shall be given, notice to an agent of the company is notice to the company.

Thus, when notice of other insurance is required to be given, notice given to the agent is sufficient, and if no special mode in which it shall be given is provided, any notice conveying the requisite information, written or verbal, is sufficient, or if the agent knew of the other insurance when the contract was entered into, it is not only a waiver of notice, but also of a forfeiture on that ground. It is not necessarily essential that the agent should be clothed with authority to issue policies. *It is enough if he is authorized to receive applications, make surveys, deliver policies and receive the premiums therefor, and is in any measure held out by the insurer as having authority to act for it in any or all of these respects.*"

In the case now under consideration there was a myriad of questions submitted to the jury. It is not surprising, therefore, that some of the findings are

Phœnix Ins. Co. v. Spiers & Thomas.

inconsistent with each other, while others are directly in the teeth of the testimony.

For instance, the jury found that the second policy did not cover the property embraced by the first one, and that the appellees, under the second policy, only proved for the loss of eight thousand pounds of tobacco. This finding is directly in the face of all the evidence, both verbal and written. In answer to question number nine of the appellees they say that Spiers and Thomas had no notice, prior to the loss, of any limitation upon the authority of Curtis as agent; and then, in response to the second question submitted by the court, they declare that the appellees knew the extent of his powers when the application for the insurance was made, and that both they and the public knew his agency was limited. It is apparent, from what has already been said, that this was a vital point in the case. It is unnecessary to further review the findings, but sufficient to say that they are too inconsistent and conflicting to support the judgment, and a new trial should have been awarded.

We have indicated our view of the law governing the case at length, not only upon account of its legal importance, but because it must, upon another trial, be submitted to a jury, under proper instructions, for a general verdict, a special one being no longer authorized.

Judgment reversed, and cause remanded for a new trial in conformity to this opinion.