CASE 66.—ACTION BY SUSIE T. COOPER AND OTHERS AGAINST THE FIDELITY & CASUALTY COMPANY OF NEW YORK.—March 15, 1910.

## Fidelity & Casualty Co. of N. Y. v. Cooper, &c.

Appeal from Knox Circuit Court.

H. C. FAULKNER, Judge.

Judgment for plaintiffs, defendant appeals.— Affirmed.

1. Insurance—Accident Policy—Proof of Death—Waiver.— Where an accident policy did not require proofs of death to be sworn to, and the resident agent who procured the policy informed plaintiffs that the proofs furnished were all that were necessary, the insurer could not dispute the claim because sworn proofs were not furnished, under the rule that the agent who takes the application, and is the only person with whom the parties deal, has authority to waive verification of the proofs.

2. Insurance—Proofs of Death—Verification—Denial of Liability. —Where an accident insurance company investigated a claim on unverified proofs of death and denied liability, the beneficiaries were not required to furnish other or further proofs.

3. Pleading—Answer—Amendment—New Issues—Time.—Where an action on an accident policy was brought June 13, 1908, and answer was filed September 16th, an application to amend the answer on the trial at the second term so as to raise new issues was properly denied in the exercise of the trial court's discretion.

4.  Appeal and Error—Exclusion of Evidence—Review—Avowal.—The exclusion of evidence cannot be reviewed on appeal, where the record contains no avowal as to what the expected evidence was.

5.  Insurance—Accident Policy—Construction—Proximate Cause of Death.—A provision in an accident policy that insurer is not liable unless the accident results in death directly, independently and exclusively of all other causes, does not relieve the company from liability for a death because of the use of intoxicating liquors by insured, rendering him less able to withstand disease, unless the proof warrants a conclusion that the abnormal condition contributed to the disease; the clause being inapplicable where the accident is the direct, natural, and proximate cause of the death.

6.  Evidence—Declarations of Persons Since Deceased—Res Gestae.—Where deceased, a railroad conductor, fell into a pit in a railroad yard and received injuries resulting in pneumonia from which he died, his statement, made a few seconds after the accident to the first person who reached him, as to how the accident occurred, was admissible as res gestae in an action on an accident policy.

7.  Witnesses—Husband and Wife—Competency of Wife.—In an action on an accident policy for a husband's death, the widow was competent to testify as to her husband's suffering after he reached home, subsequent to the injury, and concerning his physical condition at that time.

8.  Evidence—Declarations—Hearsay.—In an action on an accident policy, the widow of assured was not entitled to state what her husband said to her concerning the accident.

B. B. GOLDEN, JAS. D. BLACK, PITZER D. BLACK and U. R. BLACK for appellant.

J. M. ROBBINS for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The Fidelity & Casualty Company of New York issued to W. F. Cooper an accident policy, which, so far as material here, is as follows:

"The Fidelity & Casualty Company of New York in consideration of the premium and of the state-

vol. 137—35

ments which are set forth hereon in the schedule of warranties, and which the assured makes and warrants to be true by the acceptance of this policy, does hereby insure the person named in statement A of said schedule (and herein called the assured), in the principal sum of five thousand dollars, * * * against bodily injuries sustained by the assured during the term of twelve months from noon, standard time, of the day this policy is dated, through external, violent, and accidental means, and resulting directly, independently and exclusively of all other causes, in * * * death. * * *

"Art. 6. This policy does not cover any injury, fatal or nonfatal (1) received by the assured while or in consequence of being or having been under the influence of or affected by intoxicants; * * * (2) resulting directly or indirectly, wholly or partly from intoxicants. * * *

"Art. 8. Written notice of any accident on account of which a claim may be made must be given to the company as soon as may be reasonably possible, together with full particulars thereof, and the full name and address of the assured. Like notice of bodily injury or death on account of which a claim is to be made must be given to the company as soon as may be reasonably possible after the occurrence of the accident causing such bodily injury or death. Affirmative proofs of death or of dismemberment or of loss of sight or of duration of disability must be filed with the company in writing within two months from the time of death or of dismemberment or of loss of sight or the termination of the period of disability for which a claim is made. Claims not brought as required by this policy shall be forfeited to the company."

During the term of the policy Cooper died of pneumonia, and this suit was brought by the beneficiaries to recover upon it upon the ground that the pneumonia was caused by an injury of the lungs received in an accident. On the trial of the case before a jury there was a verdict and judgment for the plaintiffs, and the company appeals.

The facts shown by the plaintiffs are these: Cooper was a passenger conductor running between Corbin, Ky., and Norton, Va. He was in good health. On his arrival at Norton about 9:30 p. m. on the night of January 25, 1908, it was his duty to go immediately to the yard office and register his train. It was a dark rainy night. The turntable pit was near the track, and as he went from his train to the office he fell into the pit, which was about four feet deep. In the fall his chin and hands were badly cut and his chest and lungs were bruised. He lived at Corbin. On the next night he was restless and slept but little. The following morning he undertook to take his train back to Norton, but was unable to make the return trip, and was carried home sick. On reaching home he went to bed with violent pains in his chest and died of pneumonia three or four days later. Poultices were applied to his chest to relieve the inflammation. There was a blue spot something below the right nipple about 2½ or 3 inches in diameter. The doctor who treated him testified that he died of contusion pneumonia; the pneumonia setting up by reason of the injury to the lung from the hard fall against the bottom of the pit. There was no contrary medical testimony. Although two physicians treated him, only one testified at the trial. The other physician, though summoned as a witness, was not introduced by either

party. The defendant introduced proof showing that the deceased said that he fell over a hydrant; but the hydrant was about six feet from the turntable pit, and if he fell over the hydrant it is quite possible that this was the cause of his falling into the pit. The defendant also introduced some proof to the effect that the deceased was drunk. The weight of the evidence is that he was entirely sober.

The first question made on the appeal is that the plaintiffs did not furnish the company proofs of loss as required by the policy. On this matter the facts are these: The insurance had been obtained at Corbin from W. C. Killinger, who represented the company there as a solicitor of insurance. He took the application and was the only agent of the company that the insured had any dealings with. Killinger forwarded the application to the home office, and the policy was issued there. After Cooper's death, the beneficiaries applied to Killinger for the necessary blanks to make out their claim. He gave them what he called a "death certificate," telling them to fill it out and bring it to him, and he would send it to the company. This they did, and returned the paper to Killinger, who sent it to the company. This paper stated the facts substantially as we have given them, but was not sworn to. Afterwards Killinger told the widow to write a letter to the company stating, in effect, the same facts, and giving the names of the persons who knew the facts as to the accident, and the names of the doctors who had treated the assured, and the undertaker who had buried him. This she did; the paper being signed by her but not sworn to. The company made no objection to either of these papers because they were not sworn to, and Killinger told the bene-

ficiaries that they were all that was necessary. The company, upon the receipt of the first paper, sent an attorney to investigate the claim, and, upon his investigation, refused to pay, denying all liability. The notice of the injury and death of the deceased was given in a reasonable time; but it is insisted that no sworn proofs of loss were furnished the company, and that under the policy no action can be maintained. The reason that no sworn proofs were given was that no blanks for such proofs were given the plaintiffs, and Killinger informed them that the proofs furnished were all that was necessary. The policy, it will be observed, does not specify that the proofs must be sworn to. The facts were all within the personal knowledge of Killinger, the agent, and it was within the apparent scope of his power to waive proofs being sworn to. Under a long line of authorities in this state, the agent who takes the application for the insurance, and is the only person with whom the parties deal, is the agent of the company for purposes of this sort; and when the company investigated the claim, and denied liability, it was a needless formality to furnish other proofs of loss. No objection was at any time made to the proofs that were furnished on the ground that they were not properly sworn to. The company's agent misled the insured, and it would be a most palpable denial of justice to allow it to escape liability because sworn proofs of loss were not furnished. Phoenix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254; Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 23 Ky. Law Rep. 1564, 99 Am. St. Rep. 295; Home Ins. Co. v. Kabb, 113 Ky. 360, 68 S. W. 453, 24 Ky. Law Rep. 223, 58 L. R. A. 58, 101 Am. St. Rep. 354, and cases cited.

The suit was brought June 13, 1908. The answer of the defendant was filed September 16th. At the first term the case was continued. When the case was tried at the next term, the defendant on the trial tendered an amended answer. The original answer traversed the allegations of the petition, pleaded affirmatively the provisions of article 6 of the policy above quoted in bar of a recovery, and article 8 in abatement of the action. By the amended answer the defendant pleaded that in the application the insured stated that he was of temperate habits, when the fact was he was intemperate in the use of alcoholic liquors, and this was relied on in bar of a recovery. It was also pleaded that the deceased was guilty of negligence by reason of which he fell into the turntable pit, and for this reason there could be no recovery. The court refused to allow the amendment to be filed. The court has a large discretion in the matter of allowing amendments, and we cannot see that he abused his discretion in refusing to allow the amendment filed. The trial had been begun; it raised a new question upon which no preparation had been made, and would no doubt have necessitated another continuance of the case. No adequate reason was shown why the defense had not been made before.

The policy in this case is practically the same as in Campbell v. Fidelity & Casualty Co., 109 Ky. 661, 60 S. W. 492, 22 Ky. Law Rep. 1295. The court gave the jury here the instructions approved by this court in that case on the question of intoxication, and we see no reason now for departing from the rule we then laid down. Insurance policies are prepared by the insurer. Accident policies, like others, where they are capable of two constructions, should receive that

construction which is most favorable to the assured. The language of the contract should be construed as a whole, and should receive a reasonable interpretation. It should not be extended beyond what is fairly within its terms, and the general purpose of the contract should not be defeated by a strained construction of particular words. If the injury or death is due to an accident without the intervention of any diseased condition of the body, the company is liable. It is not liable where the injury or death happened in consequence of the disease or bodily infirmity, and not of the accident, or where it is due both to the accident and the disease. But where the accident, and not the diseased condition, is the proximate cause of the death, the company is liable.

In this case the defendant introduced medical proof to the effect that a person of intemperate habits is more liable to die from pneumonia than a person of temperate habits. The defendant introduced one witness, and offered to prove by him that he had seen the deceased drunk once something over three months before his death. He introduced another witness, and asked him the question if he knew the habits of the deceased as to drinking whisky, and becoming intoxicated frequently. The court refused to allow the witness to answer. The defendant's counsel then assured the court that he had a number of witnesses on this line, and the court ruled that it was not competent to ask these questions or to make avowals as to what the witnesses would state, in view of the pleadings, to which ruling the defendant excepted. We cannot know what the witnesses would have stated as there is no avowal. The court should have allowed the defendant to introduce the witnesses and to make avowals as to what they would

prove. But there is nothing in this record to show us that, if this had been done, the defendant's case would have been in any wise bettered, for the record does' not show what the witnesses would have said. To preserve his rights counsel should not only have excepted to the ruling of the court, but should have offered his proof making the necessary avowals, so that this court could see from the record whether the rejection of the evidence was prejudicial. If he had offered his witnesses and offered to make the avowals as to what he would prove, and the court had refused to allow him to make the avowal or to allow the avowal entered in the bill of exceptions, a different question would be presented. The court seems to have understood that counsel was offering the evidence with a view of tendering again the amended answer which he had refused to allow filed, while counsel insists that he was offering the evidence in support of the original answer. There seems to have been a misunderstanding between the court and counsel as to the purpose for which the evidence was offered, and we cannot say that a new trial should be granted for this matter, because we have no means of knowing whether the evidence would have been material, if admitted. Not only so, there was no evidence at all that the deceased was in a bad condition of health before he was taken sick. There is no evidence that his system was in a bad condition.

There is no evidence that he had been addicted to the use of intoxicants, to such an extent as to affect in any way his constitution, or to make him more liable to die from pneumonia. According to the undisputed evidence in the record, he was in perfect health up to the fall, showing externally no signs of

the use of intoxicants, and attending regularly to his active duties of a railway passenger conductor. The proof also is clear as to the injury to his chest, and that this injury to his chest caused the pneumonia of which he died. That the injury to his chest was the proximate cause of the pneumonia, and that the pneumonia was the proximate cause of his death, there is little room for doubt under the evidence. If the evidence referred to had been admitted, it would, unless other proof was offered, be clearly a matter of speculation that this had anything to do with his death. It was not offered to be shown by any physician who treated him that his system was in bad condition from the use of intoxicants, or that such condition of his system contributed in any way to bring about his death. While under the policy the defendant is not liable unless the accident results in death "directly, independently and exclusively of all other causes," this does not mean that the defendant is not liable where the accident is the direct, natural, and proximate cause of the death. To relieve the company from liability because of the use of intoxicants by the insured rendering him less able to withstand the disease, the proof must be sufficiently reasonable to warrant the conclusion that the abnormal condition contributed to the death of the insured. ·

It was averred in the petition that the insured received the injury, that this injury caused his death and that his death would not have resulted but for the injuries. If there was any defect in the petition —a question we do not decide—it was cured by the answer, the verdict, and judgment. The jury, under the instructions of the court, found that the death of the deceased was caused by the injuries which he received in the fall. The instruction on this question

was so plain that the jury could not have misunder-
stood them, and, although they did not use the pre-
cise words of the policy, the finding of the jury is in
effect a finding that the death of the deceased re-
sulted directly from his injuries independently and
exclusively of all other causes. The defendant made
some effort to show on the trial that the deceased
had a cold, but the great weight of the evidence was
that this was some time before, and that he was en-
tirely well when he got the fall. If the evidence
which the defendant offered had been admitted by
the court, it could not, under the facts as shown here,
have had any appreciable effect on the result.

The court properly admitted in evidence the state-
ments of Cooper made to the first person who reached
him just after he climbed out of the pit. His face
and his hands were bleeding, and his statement then,
as to how he had received the injuries a few seconds
after the accident occurred, was properly admitted
as part of the res gestae. Precisely this question was
before the United States Supreme Court in Insur-
ance Co. v. Mosley, 8 Wall. 408, 19 L. Ed. 437. There
the insured went downstairs, and when he came back
was suffering, and said that he had fallen down the
stairs. The evidence was held competent. The ruling
in this case has been followed by us in several cases.
Petrie v. Cartwright, 114 Ky. 103, 70 S. W. 297, 24
Ky. Law Rep. 903, 59 L. R. A. 720, 102 Am. St. Rep.
274; L. & N. R. R. Co. v. Molloy, 122 Ky. 219, 91 S.
W. 685, 28 Ky. Law Rep. 1113; I. C. R. R. Co. v.
Houchins, 125 Ky. 483, 101 S. W. 924, 31 Ky. Law
Rep. 93, and cases cited.

The court did not err in allowing the wife to testi-
fy as to her husband's suffering after he reached
home, and his physical condition at that time. The

wife may testify to matters of this sort as any other witness who sees a sick person. The court properly refused to allow her to tell what her husband said to her, but she could tell what she saw.

A number of minor matters in the admission of evidence are relied on in the brief; but it is unnecessary to notice them for the reason that they could have had no substantial effect upon the result. On the whole case, we think the defendant had a fair trial on the merits of its case, and no reason is shown for disturbing the judgment.

Judgment affirmed.