## Mutual Ben. Health & Accident Ass'n v. Webber.

Feb. 23, 1945.

As Modified on Denial of Rehearing May 18, 1945.

Bullitt & Middleton and Robert Lee Blackwell for appellant.

Polk South, Jr., for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

On November 7, 1928, the Mutual Benefit Health & Accident Association issued to Alvie Kessler Webber a policy wherein it agreed to pay his wife, Susie Webber, as beneficiary, $2000, and the return of certain premiums with 4% interest, in the event Mr. Webber's death resulted "directly and independently of all other causes from bodily injuries sustained through purely accidental means * * * independently and exclusively of disease and all other causes."

Mrs. Webber sued on the policy alleging that an accident was the sole cause of her husband's death and recovered judgment against the company in the sum of $2,790. The chief ground urged by the company for reversal is that no evidence was introduced showing that Webber's death resulted, directly and independent-

ly of all other causes, from bodily injuries sustained through accidental means; therefore a verdict should have been directed in favor of it.

Mr. Webber, a farmer, was 54 years of age at the time of his death on October 10, 1942. On September 14th, while housing tobacco, he was standing near the rear of a hay-frame on a wagon when the team suddenly started, causing him to be thrown violently to the ground on his chest. He immediately complained of being severely hurt and stopped work. Several witnesses gave testimony to the effect that before the accident Webber was a strong, active man and apparently in good health. He was never able to work after the accident and died suddenly 26 days thereafter from a blood clot in the coronary artery which produced an occlusion, as was revealed by an autopsy performed on October 11th, the day following his death.

On September 19th, Mr. Webber consulted his physician, Dr. Joseph Barr of Frankfort, relating the fall from the wagon and complaining of severe pains in his chest and abdomen. A stethoscope detected nothing and his heart rhythm appeared to be good. He was short of breath and Dr. Barr advised him against working. The doctor saw him about a week later when he was complaining of the same pain, and again in October something like a week before he died.

Dr. A. J. Miller, a noted pathologist of Louisville, performed an autopsy on October 11th, at the request of Mrs. Webber, with Dr. Barr and the coroner and undertaker, Louis LeCompte, being present. The autopsy showed that Webber had a pronounced arterio sclerosis which existed prior to the accident; that the heart was approximately one-third oversize and there was evidence of old hemorrhages of tiny blood vessels in some portions of the heart which had left scars that appeared to be "about the same age as the accident." There was a congestion of the lung and of the heart and a blood clot had occluded the coronary artery.

Both Drs. Miller and Barr testified that the blood clot caused the occlusion which in turn caused Webber's death. Dr. Miller was certain that the clot formed just a few minutes or a few hours before death and that the only connection the trauma had with Webber's death was that it might have aggravated or enhanced the scl-

erosis. When asked on cross-examination what causes a blood clot of the character found in Webber, Dr. Miller answered: ''I can't answer that question completely, because, so far as I know, no one knows a complete answer to that question. * * * But we do know this: That clots of that kind are frequently found in vessels that had his disease, namely, arterio sclerosis, and it is in some way associated with it.'' He was next asked if a trauma such as Mr. Webber received could cause such a clot and his answer was that occasionally trauma is a part of the etiology, or cause, of blood clots. Dr. Miller further testified that the clot shown on the tiny arteries around the heart may have been caused by the trauma but that the clot which caused Webber's death was not the result of his fall.

Dr. Barr testified that as Webber had no angina or neuralgia of the heart and was apparently well before the accident and afterwards had a continuous pain in his chest and as the autopsy showed a congestion of the lung and heart, his natural conclusion was that his death was due to the fall although it was not caused by the lung congestion. Dr. Barr was further of the opinion that the blood clot which occluded the coronary artery was caused by the trauma suffered by Webber when he was thrown from the wagon.

The long established rule in this jurisdiction applicable to such cases as the one at bar is: ''If the injury or death is due to an accident without the intervention of any diseased condition of the body, the company is liable. It is not liable where the injury or death happened in consequence of the disease or bodily infirmity, and not of the accident, or where it is due both to the accident and the disease. But where the accident, and not the diseased condition, is the proximate cause of the death, the company is liable.'' Fidelity & Casualty Co. v. Cooper, 137 Ky. 544, 126 S. W. 111, 113; Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Kentucky Cent. Life & Accident Ins. Co. v. Jones, 247 Ky. 432, 57 S. W. 2d 72; Prudential Ins. Co. of America v. Gaines, 271 Ky. 496, 121 S. W. 2d 666.

But what constitutes death resulting ''directly and independently from bodily injuries sustained through accidental means, independently and exclusively of disease and all other causes'' is often difficult to determine.

It is elementary that a policy's provisions if ambiguous will be construed in favor of the insured since it was written by the company. If policies such as the one before us are construed too strictly, the purpose of this character of insurance will be defeated. Cramer v. John Hancock Mutual Life Ins. Co., 13 A. 2d 651, 18 N. J. Misc. 367. As was said in Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 171 N. E. 914, the coverage of an accident policy is not intended to be restricted to an Apollo or a Hercules. The opinion in Prudential Ins. Co. of America v. Carlson, 10 Cir., 126 F. 2d 607, quotes from Kelly v. Prudential Ins. Co. of America, 334 Pa. 143, 6 A. 2d 55, to the effect that where the accident is the moving, sole and proximate cause of death the company will not be relieved of liability because an existing disease may be a necessary condition to the result.

In the instant case Webber was apparently in good health prior to the accident but never worked again after his fall and died 26 days later. Immediately following the accident he complained of being seriously injured. He visited his physician within a few days, complaining of pains in his chest and returned a time or two but the doctor was unable to relieve him or to diagnose his trouble. This physician testified the autopsy convinced him that death resulted from the trauma.

The other medical expert testified that in his judgment the fatal clot formed a few minutes or a few hours before death and it was not the result of the fall; however, he admitted he could not answer completely the question as to what caused the clot.

In the circumstances, it strikes us that the question of what caused Webber's death was peculiarly one for the jury to determine under the proper instructions given by the trial judge as to whether or not death resulted directly from the accident and independently of disease and all other causes.

The company attempts to distinguish the Jones case, 247 Ky. 432, 57 S. W. 2d 72, so strongly relied upon by appellee, on the ground that since that opinion came down the scintilla rule has been abolished in this jurisdiction, also, that the wording of the policy was different from the one here. There is practically no difference in the terms of the two policies, and the evidence

of Dr. Barr that in his judgment Webber's death resulted from the accident was much more than a scintilla.

There is no merit in the company's contention that the beneficiary did not meet the burden required in North American Accident Ins. Co. v. White, 258 Ky. 513, 80 S. W. 2d 577, of establishing that the cause of death was within the terms of the policy, or that her evidence was as consistent with the theory that death resulted from disease as that it resulted solely from the accident and that recovery should be denied as was done in Bingham v. Continental Casualty Co., 219 Ky. 501, 293 S. W. 968. Dr. Barr's testimony that in his judgment death resulted from the accident refutes both contentions.

Complaint is made that the testimony of Dr. Barr was incompetent that Webber would have lived longer if he had not had the blood clot. Since all the medical testimony was to the effect that this blood clot caused the occlusion which resulted in death, the complained of testimony was competent. It is further insisted that the coroner, not being a physician, was not qualified to testify that the congestion of the lung was caused by the fall. We need not determine this question since the evidence shows the congestion of the lung did not cause death and certainly this irrelevant evidence of the coroner could not have been prejudicial to the company.

The judgment is affirmed.

The Whole Court sitting.