## Sachs v. Independence Ins. Co.

January 23, 1948.

Roscoe Conkling, Judge.

Peter, Heyburn & Marshall and Gavin H. Cochran for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Joseph G. Sachs, Jr., died on January 1, 1945. Ruth G. Sachs, his executrix, brought this suit against the Independence Insurance Company to recover $2,250 under an accident policy which insured the deceased "* * * against death or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means and sustained by the insured in the manner following:

"Part Three

"By the wrecking while on a public highway of any automobile * * * within which the insured is riding * * * in a seat regularly constructed for a passenger * * *, and such injuries so sustained shall result, within thirty days from the date of the accident, in any of the specific losses set forth in this Part Three, * * *.''

The policy contained this provision: ''This insurance does not cover * * * (13) death, disability or loss caused or contributed to directly or indirectly by * * * any disease, infirmity * * * or physical impairment * * *.''

The case, by agreement, was tried on law and facts without the intervention of a jury, and the trial judge, pursuant to a joint motion of the parties, separated his findings of fact and conclusions of law. Judgment was entered in favor of the defendant, and the plaintiff's petition was dismissed. The plaintiff filed a motion and grounds for a new trial which the court overruled, but she took no exception to the conclusions of law as required by section 332 of the Civil Code of Practice. The appellee takes the position that any alleged errors in the trial court's conclusions of law cannot be reviewed on appeal since no exceptions thereto were filed, and the judgment therefore must be affirmed.

The appellee's position is correct to the extent that grounds for reversal based on alleged erroneous conclusions of law arrived at by the trial judge cannot be considered, Income Life Insurance Company v. Anderson, 250 Ky. 367, 63 S. W. 2d 1, but the case involves a question of law and a question of fact and the motion for a new trial saves the question of the correctness of the finding of facts and the inferences to be drawn therefrom. Schaaf v. Brown, 304 Ky. 466, 200 S. W. 2d 909. For example, if a case is submitted to a jury under erroneous instructions, not excepted to, the errors in the instructions are not reviewable on appeal, but a motion for a new trial will enable the court to determine whether or not the verdict is sustained by the evidence.

The evidence in this case shows that Joseph G. Sachs, Jr., a lawyer by profession, died on January 1, 1945, at the age of 51 years. Prior to March, 1938, he

was apparently in good health and performed all the duties incident to the practice of his profession. Some time after January 1, 1938, while in Washington, D. C., he was taken ill and was advised by a physician to consult a heart specialist. In March, 1938, after his return to his home in Louisville he consulted Dr. Morris Weiss, an eminent heart specialist, who found him to be suffering from a condition of the arteries around the heart which Dr. Weiss diagnosed as coronary arteriosclerosis with angina pectoris. At Dr. Weiss' suggestion the insured entered the Baptist Hospital at Louisville for a complete rest, and on March 24, 1938, while in bed in the hospital, he suffered, as stated by Dr. Weiss, "a complete blockage of one of these sclerotic coronary arteries, a condition called coronary thrombosis." Mr. Sachs remained in the hospital until May 25, 1938, when, at the suggestion of Dr. Weiss, he went to Florida for further rest. He remained in Florida until July 27, 1938, when he returned to his home in Louisville and resumed the practice of law and his normal way of living with certain restrictions prescribed by Dr. Weiss, whom he consulted periodically for checkups with respect to his heart. He had several attacks of angina pectoris during the ensuing years, usually following overexertion, but none of the attacks was serious. He always carried nitroglycerin tablets with him at his physician's direction. In September, 1944, while in Cleveland on business, he fell and fractured six ribs. On his return to Louisville he consulted Dr. Weiss who made an electrocardiographic examination of his heart, and found that the accident had not affected it. In the early part of December, 1944, the insured made a business trip to Washington, D. C., in behalf of one or more clients. He left Washington on December 23, and stopped in Cincinnati, Ohio, where he visited his married daughter. He left Cincinnati on the afternoon of December 25, 1944, in an automobile driven by his daughter. While proceeding west on Taylorsville Road near the city limits of Louisville a collision occurred between the automobile in which he was riding and an automobile driven by Mrs. A. W. Williams, Jr., which was proceeding in the opposite direction. The road was wet and slippery, and Mrs. Williams' car skidded while she was trying to pass the car ahead of her and the left front fender of

her car struck the left front fender of the car in which Mr. Sachs was riding. According to Mrs. Williams, both cars were "practically at a standstill," when the collision occurred. The two cars were damaged to some extent, but nothing was said or done at the time indicating that any of the occupants had been injured. Both Mrs. Williams and her sister, Mrs. Margaret Thompson, who came to the scene within five minutes after the accident happened, testified that Mr. Sachs was in a jovial mood, apparently was uninjured, and that he said no one was hurt. After arriving at his home he called Dr. Weiss, apparently as a precautionary measure. Dr. Weiss made a physical examination and found a reddened place or bruise over the seventh to ninth ribs. He didn't have an electrocardiogram made because, as he testified, he "felt it wasn't necessary." Mr. Sachs called Dr. Weiss on the next day and reported that he was feeling better. He went to his office daily thereafter, driving his own car, though his wife and secretary testified that he worked only a few hours each day. On New Year's eve Mr. and Mrs. Sachs entertained a party of eight. The guests left the Sachs home about 1 a. m., January 1, and shortly thereafter Mr. Sachs complained of feeling ill and asked his wife to call Dr. Weiss. Mr. Sachs took some of the nitroglycerin tablets at Dr. Weiss' suggestion, but he continued to grow worse and Dr. Weiss was called the second time. He arrived at the Sachs home about 3 a. m., and found Mr. Sachs suffering from another coronary thrombosis or occlusion similar to the one he had suffered in 1938 while in the Baptist Hospital. Mr. Sachs died before Dr. Weiss left the home. The death certificate made out by Dr. Weiss shows the cause of Mr. Sachs' death to have been coronary artery occlusion. No contributory cause is shown. Dr. B. Wilson Smock, a surgeon, who was not acquainted with Mr. Sachs, made this answer to a hypothetical question: "Never having seen Mr. Sachs, and from that very concise and definite statement of facts, I think his death was due to the injury and the nervous fright and excitement. I think, unquestionably, the accident caused his death." On direct examination Dr. Weiss was asked the following question and made the following answer:

"Q. As a specialist in the treatment of the heart,

I will ask you to state what, in your opinion, was the exciting, predominate and proximate cause of the coronary occlusion suffered by Mr. Sachs and which resulted in his death on the morning of January 1, 1945? A. Well, the coronary occlusion was undoubtedly the result of a thrombosis, which means a blood clot which had formed inside one of the coronary arteries. This thrombosis wasn't in the artery that had formerly thrombosed, best one can tell. It must have been in another blood vessel, or it could have been in a part of the old blood vessel that had become thrombosed or occluded. Now, the cause for the thrombosis in this final attack was undoubtedly started, precipitated, by the trauma that had occurred in the accident of December 25th.''

On cross-examination he was asked these questions and made these answers:

''Q. A trauma no more severe than that which Mr. Sachs suffered on December 25th, 1944, would not cause the death of a normal healthy person who did not have a pre-existing heart disease, would it? A. In my opinion it wouldn't, no. * * *

''Q. I just didn't understand your earlier answer. I take it from your testimony that you do say that Mr. Sachs' death was due at least in part to his heart disease, is that correct? A. He died from heart disease.

''Q. In other words, your opinion is that the heart disease and trauma were two facts, which together, produced the occlusion that killed him, is that correct? A. That is right.

''Q. You couldn't say, could you, Doctor, that the trauma alone and independent of all other causes produced his death? A. No, I couldn't say that.''

Briefly summarized, the evidence shows that the insured had suffered from heart disease for approximately seven years prior to his death; that he was in a minor automobile accident one week before his death, but, according to appellant's own medical witness, the injuries sustained by him in that accident would not have caused his death if he had been a normal, healthy person; that he died from a coronary occlusion, and the heart disease and trauma were two facts which, to-

gether, produced the occlusion, but the trauma alone and independent of all other causes did not cause his death. The evidence authorized a finding that the death of the insured was ''caused or contributed to directly or indirectly by * * * disease * * *,'' a risk not covered by the policy.

Appellant concedes that under a policy of this kind the insurer is not liable where the death happened as a result of the disease and not of the accident or where it is due both to the accident and the disease, but argues that where the accident is the proximate cause of the death the insurer is liable. A number of cases are cited in support of this argument, including Mutual Benefit Health & Accident Association v. Webber, 299 Ky. 846, 187 S. W. 2d 273; Guardian Life Insurance Company v. Robison, 278 Ky. 678, 129 S. W. 2d 192; Kentucky Central Life & Accident Insurance Company v. Jones, 247 Ky. 432, 57 S. W. 2d 72; Aetna Life Insurance Company v. Bethel, 140 Ky. 609, 131 S. W. 523. All of these cases are distinguishable on their facts. It would lengthen this opinion unnecessarily to point out the distinguishing features, but it is sufficient to say that the facts in each case tending to show that the injury or death resulted wholly from the accident were much more convincing than in the present case. The pertinent holding in the cited cases is that under the facts presented, though more favorable to the plaintiff than the facts here, the question of liability was properly submitted to the jury. In Prudential Insurance Company of America v. Gaines, 271 Ky. 496, 112 S. W. 2d 666, where the facts were very similar to the facts in this case, it was held that the verdict in favor of the insured was flagrantly against the evidence. Here, the trial judge found in favor of the insurer, and it is unnecessary to determine whether the evidence was sufficient to sustain a contrary finding if one had been made. There was ample evidence to authorize a finding that the disease from which the insured was suffering was more than a mere condition, and was either the sole cause of his death or a contributing cause. In either event, the insurer is not liable under its policy.

Judgment is affirmed.