**LOUISVILLE TRANSIT COMPANY, Inc.,
Appellant,**

v.

**Earl T. SEXTON, Executor of the Estate of
Nellie C. Graham, Deceased, Appellee.**

Court of Appeals of Kentucky.

Sept. 24, 1971.

John E. Tarrant, Galen J. White, Jr.,
Bullitt, Dawson & Tarrant, Louisville, for
appellant.

William M. Harvin, Stephen P. Smith, Jr., Louisville, for appellee.

REED, Judge.

This is a wrongful death case. Nellie C. Graham's personal representative alleged that in June, 1966, while she was a passenger on a city bus owned by the defendant-appellant, Louisville Transit Company, Mrs. Graham received injuries that resulted in her later death. The bus stopped when an automobile operated by a nonappealing defendant, Mrs. Howard Martin, turned into the front of the bus and into the lane of traffic occupied by it. Nellie Graham fell to the floor of the bus and was injured. She died in August 1966.

At the trial of the wrongful death action, the jury rendered a verdict against the defendant, Mrs. Martin, in the amount of $2,500 and against the defendant, Louisville Transit Company, Inc., in the amount of $8,139.30. Only the bus company appeals from the judgment that was entered in accordance with the jury's verdict. We have concluded that the issue of the appellant's liability was one to be resolved by the jury from the conflicting evidence presented and that no error prejudicial to the appellant occurred at the trial. We affirm the judgment.

The bus company asserts that it was entitled to a directed verdict in its favor because the evidence established that there was no negligence on its part. The decedent, Nellie Graham, boarded the city bus driven by the defendant's employee, Patton. After boarding the bus she spoke briefly with the driver and proceeded toward the rear of the bus. Patton, who had operated city buses for 41 years, recalled seeing Mrs. Graham through his rearview mirror standing in the aisle after she boarded, talking to another passenger. After the bus had traveled about two blocks in the righthand driving lane and before Mrs. Graham had taken a seat, near the intersection of St. Matthews Avenue with Frankfort Avenue, the bus stopped when an automobile operated by Mrs. Martin, which had been traveling west on Frankfort Avenue and to the left of the bus, pulled ahead of the bus and cut to the right into the lane of traffic which was then occupied by the bus. When the Martin car appeared in front of his bus, Patton braked to a stop, and Mrs. Graham fell to the floor close to the driver's seat. The two vehicles did not touch. The Martin car then moved farther to the right and parked at a curb near a department store a short distance west of the intersection.

Patton testified that traffic in the vicinity was heavy. According to Patton, the Martin car cut in front of him when it was no more than two or three feet away. Mrs. Martin testified that the bus was about two car lengths behind her automobile when she entered the bus's lane. Both Patton and Mrs. Martin were subjected to skillful cross-examination during which details of the accident were made more obscure, but the weight and credibility of the evidence remained a jury consideration. The testimony of several passengers on the bus was contradictory concerning other details of the accident. We believe the total evidence presented jury issues concerning whether each of the drivers was negligent towards Mrs. Graham on the occasion of the accident. Patton estimated his speed at the time of the accident at five miles per hour, although he had previously testified in a pretrial deposition that his speed was fifteen to twenty miles per hour. Mrs. Martin said both she and the bus were traveling at no more than twenty-five miles per hour as she came up on the left side of the bus.

It appears to us that the contention of the bus company that it was entitled to a directed verdict is based on the proposition that Patton's evidence must be accepted as determinative and that he was

confronted with an emergency during which he acted acceptably. Common carriers who enter into an undertaking with the public for the benefit of all those who wish to make use of their services must use great caution to protect passengers entrusted to their care. What is basically required is the conduct of the reasonable man of ordinary prudence under the circumstances. Among the circumstances, here, are the greater responsibility of the carrier and the expectable skill and experience of the operator of the bus. Thus, so far as Mrs. Graham, the passenger, is concerned, the driver owed her the exercise of an increased amount of care over and above that expected from the ordinary driver. See Prosser, Law of Torts, (4th Ed., Sec. 34, p. 181).

■ Patton was an experienced driver of forty-one years' experience; he was operating a city bus in conditions of fairly heavy traffic. We think that the jury's conclusion that he failed on the occasion of the accident to operate his bus with the degree of caution reasonably to be expected from a common carrier is not unsupportable in the evidence. In relatively active vehicular traffic passing cars frequently change lanes; if the testimony of Mrs. Martin is afforded weight, then greater caution on Patton's part could have averted the necessity of a stop sudden enough to throw his passenger to the floor. Because of the different degrees of caution to be expected from Patton and Mrs. Martin, the jury had a right under the conflicting evidence to reasonably impose liability upon both of them. See Indianapolis & Southeastern Trailways Inc. v. Blankenship, Ky., 444 S.W.2d 267 (1969), and Louisville Taxicab & Transfer Co. v. Kelley, Ky., 455 S.W.2d 535 (1970).

The appellant relies upon such cases as Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S.W.2d 1107, and Kopp v. Louisville Taxicab & Transfer Co., Ky., 257 S.W.2d 891. In those cases, however, the only evidence the jury was entitled to consider established an emergency event, which resulted in injury, that could not have been prevented by the operator of the carrier in the exercise of utmost skill and foresight. The instant case is one of conflicting evidence concerning the existence of an emergency, the foreseeability of the alleged causative conduct, and the extent of care in the operation of the bus. We have concluded that the trial court properly submitted the issue of the appellant's liability to the jury.

■ Appellant argues that there was insufficient evidence to permit the jury to find that the accident of June 1966 was a direct and proximate cause of Nellie Graham's death in August 1966. The immediate cause of death was a dissecting-aneurysm. The medical evidence described this condition as a rupture of the large artery next to the heart causing a flow of blood under great pressure into the sac around the heart by which that organ was prevented from beating. Dr. Albert Olash was out of town and Dr. Coe was attending to his patients. It was Dr. Coe's opinion that Mrs. Graham's death was not related to the accident of June 1966. Dr. Herbert Dickstein, a pathologist, also was of the opinion that the accident was not a causative factor in her death. Dr. Dickstein, however, conceded that trauma could have adversely affected Mrs. Graham's condition and Dr. Coe considered that it was possible that trauma could have played a part. Nevertheless, both Coe and Dickstein were definite in their opinions that the accident was in no way responsible for the subsequent death. Dr. Olash was just as definite that the accident and trauma experienced in it was the effective cause of the subsequent death. We simply have a situation of conflicting medical evidence from qualified physicians and we cannot say that the jury's finding that the death was caused by the accident was not supported by substantial evidence. Cf. Sachs

v. Independence Ins. Co., 306 Ky. 385, 208 S.W.2d 61 (1948).

■ At the time of the accident Mrs. Graham was 62 years old and retired. No evidence of prospects for additional employment in the future was introduced except that she had signed up for baby sitting but had secured no engagements. Although appellant urges that the court's instruction on impairment of her power to earn money was not merited, we are unable to find error in this respect. The award of the jury against the appellant was $8,139.30. The proven funeral expenses were $639.30 which indicates that the portion of the award that was allocated by the jury to the element of impairment of the deceased's power to earn money was the sum of $7,500. Mrs. Graham had earned $2,643.32 in 1962; $2,709.26 in 1963; $2,723.74 in 1964; $2,-815.49 in 1965 and $1,152.77 for the first five months of 1966. She had retired on June 1, 1966 and had been retired only 27 days when the accident occurred. Thus, it appears the jury's award for impairment of her power to earn money amounted to less than three times her annual earnings. The criterion for the determination of damages is the destruction of the deceased's power to earn money. Thus, we can hardly say that the amount found by the jury is excessive compensation for the wrongful death of a 62-year-old woman who was injured on the 27th day after her retirement, particularly where the evidence indicates that regardless of her underlying physical condition she was feeling well and intended to take occasional jobs. See Spurlock v. Spurlock, Ky., 349 S.W.2d 696 (1961). We find no error in the court's instruction which included the element of speed of the bus at the time of the accident. Cf. Adams v. Louisville Taxicab & Transfer Co., 307 Ky. 405, 211 S.W.2d 397 (1948).

The judgment is affirmed.

All concur.