Geneva DOTSON, Plaintiff,

v.

NATIONAL SURETY CORPORATION, Defendant.

No. 471.

United States District Court
E. D. Kentucky,
Pikeville Division.

Sept. 26, 1958.

V. R. Bentley, Pikeville, Ky., for plaintiff.

Hinton & May, Pikeville, Ky., for defendant.

SWINFORD, District Judge.

On February 11, 1956, and for sometime prior thereto Willie Dotson of Stone, Pike County, Kentucky, carried a policy of insurance with the defendant company indemnifying him against any loss he might sustain by reason of injury to person or property resulting from his operation of the automobile described in the policy. The liability of the company was limited under provision (A) of the policy for damages because of injuries resulting from the negligence of the owner of the automobile. Under provision (C) it was to pay all reasonable expenses for each person who sustained bodily injuries caused by accident while in the automobile and not to exceed the sum of $500 to each person. The coverage under (C) was not dependent upon the negligence of the insured as in the coverage under (A).

Under conditions printed in the policy the insured was required to (1) give notice of any accident to the company or its agent and (2) under coverage (A) if a claim was made or suit brought against the insured, the insured should immediately forward to the company every demand, notice, summons or other process received by him or his representative.

On February 11, 1956, while Willie Dotson was operating the automobile described in the policy, accompanied by his wife, the plaintiff, Geneva Dotson, the car left the road and Geneva Dotson·was severely injured. She was taken to a hospital where it was found that she had a broken hip and numerous other injuries. She remained in the hospital for about eight days and was constantly under the care of a physician for several weeks.

The policy of insurance had been written by James I. Dotson, the local agent of the defendant company and a neighbor of Willie and Geneva Dotson in Pike County. On the afternoon of the accident the insured reported the accident to James I. Dotson. James I. Dotson reported the accident on the proper form, from information furnished by Willie Dotson, to the company's Lexington office. Upon receipt of this report the defendant's adjuster sent to Mr. and Mrs. Dotson on February 16, 1956, forms headed "Medical Payments Coverage" requesting them to fill out the forms and return to the adjuster. On March 19, 1956, the adjuster wrote to Mr. and Mrs. Dotson a letter in which he stated: "We received your report of accident which indicated as a result of that accident you were injured. Upon receipt of the report, we forwarded to you, 'Claimants' Affidavit in regard to Medical Payments Coverage." Shortly thereafter the forms were completed, sworn to and returned to the adjuster. On May 17, 1956, the defendant paid medical bills for Geneva Dotson in the sum of $336.63 and for Willie Dotson in the sum of $25.

It will be noted that throughout this period of nearly four months, while the insurer had full and detailed information of the accident and the fact that there was a serious injury to a passenger in the insured's car, it made no effort to contact either the insured or the passenger. The matters heretofore set forth were carried out by correspondence from the defendant's adjuster in Lexington. The defendant apparently showed no concern that its insured might have a claim for damages for serious injury to a passenger in his car which was due to his negligence. It is difficult to understand how the defendant company could have been so grossly indifferent to its duty to protect its insured. Mr. and Mrs. Dotson were ignorant people and were relying entirely upon the integrity of their friend and neighbor, James I. Dotson, who had written the insurance contract.

■ The company's only answer to this is that because they were husband and wife all of their actions should be viewed with suspicion and that the company should be saved harmless in this lawsuit on the pure fiction that there was collusion by reason of the marital relationship. As the presiding judge at the trial, I was impressed with the apparent honesty of the plaintiff and her husband. While the closeness of the relationship of husband and wife is such that transactions between them should be carefully scrutinized, it is not proper for the court to make a finding of fraud and collusion as a matter of law without evidence of something more than the marital relationship.

On May 31, 1956, Geneva Dotson and her husband came to Pikeville and delivered the insurance policy in question to her attorney, V. R. Bentley. Mr. Bentley immediately filed suit in the Pike County Circuit Court. Summons was issued and served on Willie Dotson on June 14, 1956. The summons required answer within twenty days. This summons was not mailed to the company nor given to the agent, J. I. Dotson, but the plaintiff in this case, Geneva Dotson, states that on June 27, 1956, she told J. I. Dotson in the presence of her husband, Willie Dotson, that she had filed the suit. She further testifies that at a later time she again told James I. Dotson that she had sued her husband to recover damages growing out of the accident. She testifies that on both of these occasions James I. Dotson, acknowledged the information but passed it off by saying in a laughing way, "You know you didn't." Willie Dotson corroborates his wife and also states that he talked to James I. Dotson

on several occasions about the matter and told him that something was going to have to be done.

The case of Geneva Dotson v. Willie Dotson for damages for bodily injuries growing out of the accident was tried in the Pike Circuit Court on September 11, 1956. The jury returned a verdict in favor of Geneva Dotson in the sum of $8,000 and a judgment was entered for that amount. On October 15, 1956, execution was issued and placed in the hands of the sheriff of Pike County. On November 13, 1956, the execution was returned with the notation "no property found".

The present action was filed April 9, 1957. A jury trial on December 10 and 11, 1957, resulted in a verdict for the plaintiff of $8,000, the amount of the judgment secured in the Pike Circuit Court.

The record is now before the court on the motions of the defendant for judgment notwithstanding the verdict under Rule 50(b), Federal Rules of Civil Procedure, and for a new trial under Rule 59(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

The question presented is whether or not the policy was forfeited by reason of the failure of the insured, Willie Dotson, or anyone for him, to give notice of the action filed in the state court by Geneva Dotson on which judgment was rendered in the amount of $8,000.

It is contended by the defendant that since the summons issued from the state court was not sent to the defendant that there was a failure on the part of Willie Dotson to comply with the terms of the contract and that the court should have directed a verdict for the defendant at the close of the plaintiff's case or at the close of the whole case.

It is the opinion of the court that the ruling of the court overruling the motion was proper. Geneva Dotson and her husband positively testified that they had given notice to the company of the accident and that the company had acknowledged that notice by making partial settlement of the claims growing out of injuries received by Willie and Geneva Dotson by paying the medical expenses. It was further testified that on numerous occasions Willie Dotson had talked to James I. Dotson about the claim which Geneva Dotson was making against him for her injuries; that on at least two occasions James I. Dotson was orally notified that a suit had been brought; and that he acknowledged this information but treated it lightly.

This presented an issue of fact which was properly submitted to the jury. It cannot be argued otherwise unless it is argued that the court should hold as a matter of fact that both Willie Dotson and Geneva Dotson were perjuring themselves and telling an absolute falsehood and that James I. Dotson was telling the truth when he testified that he did not have these conversations. It is seen that this evidence is directly in conflict and therefore the case is one which peculiarly adapts itself to a determination of the issues presented by a jury.

In my judgment the notice of the accident as given to J. I. Dotson on the day of the accident was all the notice that was required. It then became the duty of the defendant to seek to settle whatever claims might arise from the accident. The defendant cannot claim that because it settled a part of the claim that it was entitled to further notice of other claims. After all, insurance policies are furnished to automobile operators for a substantial consideration in the form of premiums and there is a contractual relation with reasonable implications that for the premium, where notice is given of an accident out of which claims may arise, the company is to seek to hold the policyholder harmless. The policyholder is not charged with a continuing responsibility of keeping the insurer informed of every step of the proceeding. The provision with reference to the sending of summons or written notice is in the event a suit has been filed and the insured is advised for the first time of such a claim.

The defendant, having paid a substantial medical claim, might reasonably

522

have anticipated that claim for bodily injuries would be made. Under the circumstances in this case, it was at least reasonable to expect that the defendant's adjuster would interview and get some kind of a statement, if not a release, from the injured party. Here nothing was done to protect the insured and it would seem to me that a man's wife should be on an equal plane with any other woman who might be riding in the car with the insured. If his negligence resulted in her injury, it was the contractual obligation of the defendant to at least be concerned that he not have a judgment taken against him.

As the record stands, Geneva Dotson, a woman 63 years of age, the mother of twelve children and to all appearances a woman of honest purpose, was severely, painfully and permanently injured through the gross negligence of her husband while she was protesting his negligence in the operation of the automobile named in the policy.

The case of Frank Parmelee Co. v. Aetna Life Ins. Co., 7 Cir., 166 F. 741, is squarely in point. The provisions of the policy were very similar to those in the case at bar and the defendant had immediate notice of the accident out of which the injury for which damage was claimed arose. A lawsuit was later filed on which summons was issued but the summons was not immediately forwarded to the company under the provisions of the policy requiring the insured to immediately forward any summons or other process as soon as it had been served. The court held that the defendant should not escape liability on such a mere technical departure from the letter of the contract; that the defendant had been given full information of all the facts with reference to the accident and had the data upon which to base its judgment as to what defense might be made to any action brought against its insured and how a defense could be conducted.

This case is referred to by the Kentucky Court of Appeals in Jefferson Realty Co. v. Employers' Liability Assur-

ance Corporation, 149 Ky. 741, 149 S.W. 1011. The rule was expressly approved although differentiated from the facts in the Aetna Life Insurance case.

Willie Dotson had never known any person other than James I. Dotson, the agent, in dealing with the defendant company. His report of the accident to James I. Dotson had brought results to the extent that the medical bills had been paid. He had every reason to assume that other dealings with reference to the company for further claims growing out of the same accident would be handled in the same way. It would be unconscionable to say that he was placed under a duty of dealing directly with the company through its Lexington office on the question of his personal liability. The object and purpose of provision for such notice was to afford the company an opportunity to make an early and prompt investigation, not only to learn and ascertain the facts of the accident, but also to protect itself from a possible fraudulent and fictitious claim. Southern Surety Co. of New York v. Heyburn, 234 Ky. 739, 29 S.W.2d 6.

Reason, good sense, good business and fair play demanded that the company, in conformity with the obligations of the contract, should immediately make investigation to determine whether or not a claim would be made against the insured and to seek to protect him not only from liability but also from the embarrassment and trouble of a lawsuit. The defendant did nothing but sit back and wait until a judgment had been taken against the insured and then sought to avoid the terms of the contract on the ground that it was being defrauded for the sole reason that the insured and Geneva Dotson were husband and wife.

It is the duty of the court in determining liability under policies such as this to give effect to all of their provisions and liberally construe them in favor of the insured. Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S.W.2d 307.

In Travelers Insurance Co. v. Boyd, 312 Ky. 527, 228 S.W.2d 421, the court

pointed out that while the requirement of the insured to cooperate with the insurer is important to the insurer, it might open the door to collusion between the insurer and insured to defeat the injured person since the injured person has no way to compel this cooperation. Could it be considered at all just or lawful to deny Geneva Dotson her claim for severe injuries against a defendant, who had contracted to pay it, solely on the ground that Willie Dotson, after having notified the defendant of the accident, failed to continually notify it of further steps taken by the injured person?

The case was submitted to the jury on the theory that notice to the agent, James I. Dotson, was notice to the defendant. As I have stated, there was direct conflict on this point. The jury, after hearing the witnesses testify, observing their demeanor on the witness stand, and paying close attention to the arguments of able counsel for the respective sides, decided that Mr. and Mrs. Dotson had told James I. Dotson that the action in the state court had been filed.

 I think, under the facts in this case, that notice to the agent was notice to the company. The powers of the agent are, prima facie, coextensive to the business entrusted to his care and will not be narrowed by limitations which the insured, with limited business experience, does not know. An insurance company must be held responsible to the parties with whom it transacts business for the acts and declarations of the local agent who is responsible for the business, within the scope of his employment, as if they proceeded from the principal. Union Mutual Life Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L.Ed. 617; Henry Clay Fire Ins. Co. v. Grayson Co. St. Bank, 239 Ky. 239, 39 S.W.2d 482.

It was also pointed out in the Henry Clay Fire Insurance Company case that there is a tendency of recent decisions to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law because the agent usually represents a company remotely located from the immediate contracting parties. The company's patrons in the vicinity of the agent naturally look to him for direction generally as to the insurance obtained through him. Phoenix Ins. Co. v. Spiers & Thomas, 87 Ky. 285, 8 S.W. 453.

While this issue of fact was submitted to the jury and resulted in a verdict for the plaintiff, I do not believe that the whole case rests on this question. I reaffirm my conviction that the original notice of the accident was sufficient compliance with the contractual provisions of the policy. If the defendant company failed to follow through and properly protect the insured it will have to stand the consequences.

The motion for judgment notwithstanding the verdict and the motion for a new trial should be overruled. An order to that effect is this day entered.