Patsy Jane LEMONS, by and through
Carlos Lemons, Plaintiff,

v.

STATE AUTOMOBILE MUTUAL INSUR-
ANCE COMPANY, Defendant.

No. 885.

United States District Court
E. D. Kentucky,
Covington Division.

Jan. 25, 1960.

See, also, 171 F.Supp. 92.

Frank Gilliam, Lexington, Ky., Robert Milby, London, Ky., for plaintiff.

Stoll, Keenon & Park, Lexington, Ky., for defendant.

SWINFORD, District Judge.

This is an action on a policy of automobile liability insurance. A statement of the facts in their chronological order is important to an understanding of the decision in this case. William Moore, Jr. was the owner of a 1949 Ford. On May 10, 1956 he purchased from the defendant, through the McCracken Insurance Agency of Cynthiana, Kentucky, the policy of personal liability insurance on which this action is based. Item 3 recited that the policy period was from May 10, 1956 to May 10, 1957. The premium, totaling $50, was to be paid as follows: the first installment of $20 upon the issuance of the policy; the second installment of $15 on or before noon of August 10, 1956; and the third installment of $15 on or before noon of November 10, 1956. The first installment was paid on May 10, 1956 as provided by the policy. No other installment was ever paid.

On May 3, 1957, William Moore, Jr. and the Ford automobile, on which the policy was taken, were involved in an accident in which the plaintiff, Patsy Jane Lemons, was injured. No report of the accident was made to the defendant or any of its agents, including the McCracken Insurance Agency at Cynthiana, the home of William Moore, Jr. On April 8, 1958, Patsy Jane Lemons, plaintiff here, filed an action in the Harrison County (Kentucky) Circuit Court against William Moore, Jr. in which she sought damages growing out of the accident of May 3, 1957. Process on this state court action was issued and served on the policyholder on April 8, 1958.

Moore consulted an attorney and upon his advice took the summons to the McCracken Insurance Agency in Cynthiana and laid it down on the table or desk of the agent with knowledge of the agent. Neither Moore nor the insurance company made any defense to the state court action and on October 24, 1958, a judgment was entered in favor of Patsy Jane Lemons in the sum of $27,659.03.

On December 12, 1958 this action was instituted by Patsy Jane Lemons in the Harrison County Circuit Court on the automobile liability insurance policy issued to William Moore, Jr. on May 10, 1956. Her complaint alleged that the policy was in full force and effect at the time of the accident which resulted in her injuries and that they were caused and brought about by the sole negligence of William Moore, Jr. In addition to the five thousand dollar limit, as evidenced by the face of the policy, she sought recovery for the full amount of her judgment in the state court, alleging that the defendant was liable because of its negligent failure to defend the action in the state court under the terms of the policy.

The defendant, a non-resident of Kentucky, removed the case to the federal court and it is now submitted for final judgment on the record, stipulations and depositions.

The plaintiff must be denied recovery and her complaint dismissed on two grounds. First, the policy had lapsed for non-payment of premiums and was not in effect at the time of the alleged injury. Second, the policyholder did not notify the insurance company or its agent of the accident within a reasonable time as provided by the terms of the policy and did not give assistance and cooperation.

Paragraph 24 of the "Conditions" set forth in the policy provides that the policy may be canceled by the company by mailing to the insured at the address shown in the policy written notice stating that in ten days thereafter such cancelation shall be effective. The mailing of the notice shall be sufficient proof of notice to the insured. The effective date and hour of the cancelation stated in the notice shall become the end of the policy period.

Paragraph 27 provides that when any installment is not paid when due, the insurance afforded by the policy shall terminate upon notice mailed by the company to the named insured at the address shown in the policy, stating when such termination shall become effective. It is further provided in this paragraph of the policy that the mailing of the notice shall be sufficient proof of notice and that the company shall not be liable for any loss occurring after the date and hour of termination specified in the notice.

In the light of the record it is difficult for the court to understand how the plaintiff can seriously contend that this policy of insurance was in effect on the date of the accident, which occurred within seven days of one year after the policy had been originally issued. The first installment of $20 had been paid and no other sum had ever been paid by the policyholder for the policy. The installments due on August 10 and November 10 had been ignored. The insured called at the office of the McCracken Insurance Agency two or three months after the policy was issued but before the second premium installment was due. The purpose of his call was to ascertain whether or not the policy covered a damage to his car, known as property dam-

age liability. When he was advised by Mr. Shearle Hicks, an agent in the Mc-Cracken Insurance Agency, that damage to the car was not covered by the policy, he told Mr. Hicks to cancel the policy. In addition to the statement of Mr. Hicks on this question, the deposition of William Moore, Jr. contains the following questions and answers which clearly indicate that he was fully aware that the premium was due and that he had no intention of paying it:

"Q. Mr. Moore, this policy was issued by Mr. McCracken, is that right? A. Yes, sir.

"Q. And I believe you stated here —rather it is stated here May 10, 1956? A. Back in that neighborhood, yes.

"Q. When it was issued, you gave him $20, didn't you? A. No, between $30 and $40, like I said while ago.

"Q. What? A. Between $30 and $40, I don't know exactly. I paid it in cash.

"Q. Do you know whether it was $30, $40 or $20? A. Between $30 and $40.

"Q. Was anyone present when you paid him that? A. Him and the secretary was all.

"Q. What is the secretary's name? A. I don't know that.

"Q. Did you get a receipt? A. No, I don't think he had that much sense to give me a receipt.

"Q. He is just a dumb man, is he? A. I think so, yes.

"Q. Is his secretary dumb too? A. I think so.

"Q. Did you ever pay any more on this policy? A. Hell, no, never did and ain't about to.

"Q. Why? A. Anybody that can't take care of that I don't think much of them.

"Q. Do you owe them anything since the accident happened? A. Hell, no.

"Q. Weren't you supposed to pay $50? A. Would you pay after he wouldn't take care of that. * * *. I just give him one payment and didn't go back anymore.

"Q. You didn't pay $50 at anytime, did you? A. No, not that much, no."

Notwithstanding this disregard of the policyholder's obligation and his breach and abandonment of the contract, the defendant company fully complied with its terms and provisions in sending him the required notice of cancelation, mailed to the address given by the policyholder as his home address at Cynthiana, Kentucky, R.F.D. No. 3. This notice was mailed and its mailing was established by the fact that it was returned to the company by the post office. Subsequently, the company mailed a second notice to the same address which obviously reached its destination as it was not returned as the first notice had been.

The mailing of notice shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall fix the end of the policy period. The defendant is not required to show a receipt of the notice. The terms of the policy control and in the absence of statute or state ruling to the contrary, where the policy provides for notice by mailing, the proof of such mailing effects a cancellation. O'Daniel v. Michigan Mut. Liability Co., D.C., 88 F.Supp. 339; Woodard v. Calvert Fire Ins. Co., Ky., 239 S.W.2d 267; American Fire & Casualty Co. v. Combs, Ky., 273 S.W.2d 37.

In the case of American Fire & Casualty Co. v. Combs, supra, the policyholder urged that the attempted cancellation of his policy was ineffective as he did not receive the cancellation notice and because the company had not returned the unearned premium to him. In the opinion the court cited Woodard v. Calvert Fire Ins. Co., supra, and held that proof of the mailing of the notice of cancellation to the assured's address shown in the policy was in compliance with the terms of the contract and was sufficient notice to uphold the cancellation.

The circumstances surrounding the issuance of the policy on May 10, 1956 and

the payment of the initial installment not only show in detail on the face of the policy that it was delivered to Moore, but is fully substantiated by the testimony of Mr. McCracken and the exhibits filed with his deposition.

Another circumstance to be considered in connection with the defense of cancellation is the great time that elapsed between the issuance of the policy and the loss claimed under the policy. It must be borne in mind that William Moore, Jr. had this policy in his possession and knew that the second and third installments were deferred and had not been paid. No claim was made under the policy, growing out of the accident herein complained of, until April 1958, which was twenty months after the second installment was due and eleven months after the accident occurred.

■ The court is of the opinion that the defendant has sustained the burden of proving a cancellation of the policy in August 1956.

What has been said with reference to the evidence on the defense of cancellation applies with equal force to the second defense of lack of notice of the accident and failure of the policyholder to give notice in accordance with the terms of the policy.

It would serve no purpose to again review the evidence or to belabor the point that the policyholder had clearly authorized a cancellation of the policy and ignored every obligation which he assumed by its terms from August 1956 until April 1958. It is established without doubt that he was not only careless and indifferent but was actually antagonistic toward the agent of the defendant company. He continually evidenced his intention to have nothing further to do with the McCracken Insurance Agency or the policy.

Paragraphs 1 and 18 of the "Conditions" of the policy imposed upon Moore an obligation to give written notice of the accident to the company or its authorized agent as soon as practicable; the notice to contain particulars sufficient to identify the insured and also reasonably inform the company as to the time, place and circumstances of the accident and the names and addresses of the injured persons and the names and addresses of available witnesses. The insured was to cooperate with the company and assist it in effecting settlements and in securing and giving evidence.

■ These provisions have been consistently upheld by the courts as being reasonable and enforceable. Where the policy provides that the giving of notice or the furnishing of proof of disability, or both, are a condition precedent to a right to recover on the policy, such provision is controlling unless waived by the insurer. What the parties have themselves written down and agreed to as an essential ingredient for a basis for a claim must be accepted by the courts as of the essence of the contract and it may not be assumed that the parties would have entered into the engagement otherwise. The rule rests upon the right of the parties to insert in their contract any provisions they desire or agree upon and the court should not and cannot change that agreement or make a new contract for the parties under the guise of interpretation or construction. The rule applies to an insurance contract as it does to a contract on any other subject. Equitable Life Assur. Soc. of United States v. Adams, 259 Ky. 726, 83 S.W.2d 461.

In Ambrosius Industries, Inc. v. Liberty Mutual Ins. Co., D.C., 149 F.Supp. 24, 27, Judge Shelbourne quoted with approval the language of the court in the case of Jefferson Realty Co. v. Employers' Liability Assurance Corp., 149 Ky. 741, 149 S.W. 1011, the accepted law of Kentucky, to the effect that a reasonable compliance with the conditions of the contract relating to notice is "indispensable to fix liability."

■■ The terms of the policy fix the the measure of the insurer's liability and if the proof establishes the fact that the contract has been terminated by the violation of its conditions, there can be no recovery. The compliance of the insured with the terms of the contract is a condi-

tion precedent to the right of recovery. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231; Royal Indemnity Co. v. Watson, 5 Cir., 61 F.2d 614.

In the light of the ruling of the Court of Appeals for the Sixth Circuit in the case of National Surety Corp. v. Dotson, 270 F.2d 460, it would be clear error for this court to find for the plaintiff in the case at bar. In that case, which was tried by the undersigned judge, the insured verbally notified the local agent of the insurance company on the day of the accident. This notice was accepted as sufficient by the company and it proceeded to secure the necessary papers to make an adjustment for doctors' bills and hospitalization of the injured party, thereby acknowledging the liability on the part of its insured. At a later date the injured party filed suit against the insured. Verbal notice was given to the local agent, as in the first instance, on more than one occasion as found by the jury. The Court of Appeals reversed the judgment of this court, 166 F.Supp. 518, on the ground that the terms of the policy had not been strictly complied with, in that the summons had not been mailed to the company in accordance with the contract. It was held that the insurance company was entitled to rely upon the strict wording of its contract and that the issue presented a pure question of law as to the right of the company to insist that its insured comply with the plain contract provisions as agreed to before liability arose. In other words, even though the company had actual notice of the injury immediately after it occurred and actual notice of the filing of the suit against its insured, the company could evade liability because of the failure to follow literally the written provisions and conditions of the policy. In my opinion the Dotson case was a much stronger case for the claimant than is the case at bar.

The record is entirely barren of any evidence offered by the plaintiff or any inferences drawn from the testimony of the witnesses for the defendant that William Moore, Jr. made any attempt whatsoever or any pretext of notifying the defendant of the accident. It follows, of course, that he offered no asistance nor made himself available to render aid in the securing of evidence or settlement of the claim on which this action is based. On this second ground the defendant has also sustained the burden of proof.

The conclusions I have reached on the matter of the policy make it unnecessary for me to consider the claim of bad faith on which the plaintiff asks to recover the full amount of the judgment secured in the state court.

I am of the opinion that the complaint should be dismissed. Findings of fact, conclusions of law, and judgment in conformity with this memorandum are this day entered.